**Alexander PATTON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21161.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 20, 1968.

Decided Oct. 29, 1968.

Mr. Joseph A. McMenamin, Washington, D. C., (appointed by this court) for appellant.

Mr. Roger E. Zuckerman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. John A. Terry, Asst. U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before McGOWAN, TAMM and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge:

Convicted by a jury of robbery, two assaults with a dangerous weapon, and possession of such weapon, appellant seeks reversal here because of (1) the failure of the District Court *sua sponte* to raise the insanity defense and (2) the receipt in evidence of identification testimony by two eye-witnesses. We find these claims unavailing and, for the reasons hereinafter set forth, we affirm.

I

On the morning of April 9, 1966, Mr. Levine, the owner of a small grocery store known as the Royal Market, was confronted in his store by a man with a drawn gun who announced, "This is a holdup." When Levine said, "Who are you kidding," the robber shot Levine's clerk, one Martin, in the stomach, and proceeded to take money from the person of Levine and from the cash register.

Levine identified appellant in court as the robber, and testified further that he remembered appellant as one who had come into the store three days before the robbery to buy cigarettes but had lacked the requisite amount of money. Levine gave the police a description of the robber directly after the robbery, and, a few weeks later, picked appellant out of a five-man lineup at the police station. Martin, who had survived his

bullet wound, also identified appellant in court, and recognized him as the man who had made the abortive effort to buy cigarettes.

After a police officer had taken the stand to testify about the lineup, the jury was dismissed for the purpose of an inquiry into the circumstances of the arrest. Two policemen testified that, while answering a robbery call to a High's Store, they saw appellant walking with two men, one of whom filled the description of one of the High's robbers. They arrested the latter, found a gun on him, and arrested his companion, who was also armed. One policeman then recognized appellant as answering the description of the man who had robbed the Fair Trade Market a few weeks before—a crime which the officer had investigated. Advising appellant of his reason for doing so, the officer then arrested appellant for the Fair Trade Market robbery.

Fifteen minutes later at the police station, appellant was picked out of a lineup by the owner of the Fair Trade Market, and was then booked on that charge. This occurred at about two in the afternoon. At nine the next morning appellant was taken before the magistrate on this charge. Just prior to that presentment, appellant was placed in a lineup with four other individuals, from which he was picked by Levine as the robber of the Royal Market—the crime involved in the conviction before us. A photograph of the lineup was produced at the trial and is a part of the record on this appeal.

## II

Appellant's defense at trial was confined to alibi testimony. No intimation of any kind respecting insanity was made to the trial judge by any witness, by either counsel, or by appellant himself. On this appeal, however, appellant points to the hospital report rendered in connection with a pre-trial commitment to determine his competence to stand trial. 24 D.C.Code § 301 (1967). In its key paragraph set forth in the margin,[1] this report found that appellant was competent to stand trial but also stated the opinion that appellant possessed a personality disorder. It is urged that under these circumstances the trial court's failure to intrude the insanity issue into the case necessitates reversal.

We are not persuaded that this is so. There is, as we have made plain in Whalem v. United States, 120 U.S. App.D.C. 331, 346 F.2d 812, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965), a discretion residing in the trial court as to whether the insanity defense should be interposed on behalf of a defendant even though he does not seek it. In exercising that discretion, the court is not to be oblivious of the defendant's interests in their entirety, including his wish and capability to prove his innocence of the commission of the alleged act.[2] In this instance, appellant's alibi defense was vigorously and seriously pursued at trial, and it could only have been attenuated by an insanity plea.

1. It is our opinion that [appellant] is mentally competent for trial by virtue of having a rational as well as a factual understanding of the proceedings against him and being able to consult with counsel with a reasonable degree of rational understanding. The determination was made as a result of examinations which indicate that there was no evidence of hallucinatory or delusional experiences during his hospitalization; attention, perception, comprehension, orientation, memory and general intellectual functions were considered within normal limits.

It is also our opinion that he has now, and had on about April 15, and 30, 1966, a Personality Disorder, Schizoid Personality; however, we are unable to render a valid opinion as to productivity.

2. *See* Trest v. United States, 122 U.S. App.D.C. 11, 350 F.2d 794 (1965), cert. denied, 382 U.S. 1018, 86 S.Ct. 634, 15 L.Ed.2d 532 (1966); Harper v. United States, 122 U.S.App.D.C. 23, 350 F.2d 1000 (1965), cert. denied, 383 U.S. 951, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966).

■ By the same token, there was little indeed to cause the trial judge to think that such a strong likelihood of insanity existed as to require it to be brought into the case irrespective of appellant's wishes. The record shows nothing to raise alarm signals on the judge's horizons, other than the reference to personality disorder. Unaided by other circumstances, this fact alone does not convert the trial judge's inaction into a positive abuse of discretion requiring reversal. See Trest v. United States, 122 U.S.App.D.C. 11, 350 F.2d 794 (1965), cert. denied, 382 U.S. 1018, 86 S.Ct. 634, 15 L.Ed.2d 532 (1966).

### III

■ At the trial the defense challenge to the identification testimony was mounted mainly upon a claim that appellant had been illegally arrested. This is evidenced by the fact that Levine testified about his in-court and pre-trial identifications without objection of any kind, and it was only after the police testimony began that the defense asked for inquiry out of the jury's presence into the circumstances of the arrest.[3] The court gave credence to the officer's testimony that he had arrested appellant because of his resemblance to the robber of the Fair Trade Market, and found probable cause to reside in this fact. On the record before us, there is no apparent error in this determination, and there is, thus, no foundation for appellant's argument that the lineup identification was the fruit of a custody illegal from its very inception.

■ The due process attack upon the lineup is made for the first time on this appeal. It takes the form of an argument, founded principally upon references to Mr. Levine's testimony, that the lineup was unduly suggestive because appellant's companions in the lineup were wholly different from appellant in personal appearance. The argument founders in this instance for two reasons. The first is that we do not read Mr. Levine's testimony so much as indicating the disparate nature of appellant's lineup associates as it does the positiveness of Mr. Levine's identification of appellant. This is, of course, not surprising, since his opportunity to observe the robber at the time of the crime was excellent, and the description given by him to the police at that time was detailed and accurate. Secondly, in this case we have the photograph of the lineup before us, and that leaves no room for any serious contention that the police stacked the lineup with people whose physical characteristics were unreasonably different from appellant's. There is no challenge of any kind to the authenticity of the photograph, and its effect is decisive. As a technique to resolve authoritatively this kind of an appellate issue in the area of identification testimony, the utilization of photographs appears to hold out great promise.

The judgment of conviction is

Affirmed.

---

3. Trial counsel's motion to suppress was directed to the police testimony, and its basis was initally stated to be as follows:

> My theory is. Your Honor, is [sic] that the officer's testimony is the fruit of an illegal arrest in that it was gathered as a result of the police line-up itself, which took place during a time subsequent to an illegal arrest.

As the hearing went on, counsel purported to broaden this base by reference to Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The trial court's ruling was, of course, made prior to our decision in Adams v. United States, 130 U.S.App. D.C. 203, 399 F.2d 574 (1968); and it is urged now upon appeal that Adams requires reversal. We find no such necessity. Unlike Adams, there was a courtroom identification here by an eyewitness, Martin, whose testimony could in no way be challenged on Mallory grounds. We also note in passing, without assessing its legal significance, that there are differences between the police conduct shown by this record and that of Adams. Most significant, however, is the fact that in this case, unlike Adams, the trial court was given no real opportunity, through a timely objection, to explore and assess whether the police delay in presentment was improper, since the Mallory objection came long after Levine had testified.