**UNITED STATES of America**

v.

**Lester H. THURMAN, Appellant.**

**No. 22466.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 1969.

Decided Oct. 28, 1970.

Mr. S. White Rhyne, Jr., Washington, D. C. (appointed by this Court), for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, Asst. U. S. Atty., and Robert P. Watkins, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., at the time the record was filed, and Miss Carol Garfiel, Asst. U. S. Atty., at the time the record was filed, also entered appearances for appellee.

Before McGOWAN, ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Following a jury trial, appellant was convicted on one count of robbery,[1] three counts of assault with a dangerous weapon,[2] and one count of carrying a pistol without a license.[3] On this appeal, he raises three major grounds for reversal.[4] First, he claims that he was arrested without probable cause and that evidence resulting from his detention, in

---

1. D.C.Code § 22–2901 (1967).

2. D.C.Code § 22–502 (1967).

3. D.C.Code § 22–3204 (1967).

4. Other contentions are discussed in notes 14, 21, and 25, *infra*.

particular the lineup and ensuing in-trial identifications, should not have been admitted. Next, he charges that the line-up at which he was identified was so un-necessarily suggestive as to promote the kind of irreparable misidentification that violates due process. Lastly, he com-plains that two pistols allegedly used in the robbery, and the alleged proceeds of the robbery, were received in evidence without a sufficient foundation in the proof to link them to him. We affirm.

I

On January 4, 1967, at about 12:35 p. m., two men entered the office of the Dismer Auxier Real Estate Company, located at 805 H Street, Northwest, held the occupants at gunpoint, and robbed the company of $205. The robbery was witnessed by Louis C. Dismer and Charles Carson Auxier, both of whom testified at trial.[5] The affair lasted only a few minutes and the two men fled, Dismer pursuing them out onto Eighth Street. One of the robbers turned into a blind alley which leads to row houses fronting on Eye Street. Dismer fol-lowed, but the man disappeared, appar-ently into one of the houses abutting the alley. Dismer then retreated and tried, unsuccessfully, to find the other robber.

In the meanwhile, Auxier had tele-phoned the police. About ten policemen responded within minutes and concen-trated their search on the 800 block of Eye Street. Descriptions of both men were furnished and were run on the po-lice radio. One of the descriptions alert-ed the officers to be on the lookout for "number one, Negro male, 25 years, five foot, eight–five foot, nine, 140 pounds, medium complexion, had a black leather jacket and brown hat, he was armed with is believe [sic] to be a .38 caliber."

The police abandoned their search aft-er about 45 minutes, but returned several minutes later to answer a call about a robbery at 800 Eye Street. There they espied two suspects on the roof. Offi-cers Bernard R. Short and Herman F. Cornish climbed the fire escape and ex-plored the roof covering the row houses. Sighting a loose board in the skylight at 802 Eye Street, Officer Short opened the skylight, and a pistol dropped or was thrown in front of him. Another pistol was subsequently found nearby by Offi-cer Cornish. Appellant's co-indictee, Ed-die Stevens, was arrested when found hiding under a bed in a third-floor apart-ment, and $105 was discovered in the freezer of the refrigerator therein. Stevens was searched at the precinct sta-tionhouse, and an additional $100 turned up.

Officer Roy Gavin, who was in the al-leyway at the time Stevens was arrested, heard an officer on the roof shout that one of the robbers had been captured and that the other one was coming down. Officer Gavin then heard a noise, which sounded like someone dropping, and saw appellant crouching in the basement stairwell. Appellant, who save for at-tire[6] fitted the broadcast description of "number one," approached Officer Gavin and said, "I'm not one of them." "One of them what?," Officer Gavin asked. "One of those hold-up men" was the reply, and Officer Gavin then arrested appellant. Upon notification by the police, Dismer and Auxier were driven to the station-house where, at a lineup, they identified appellant as one of the robbers.

Indicted jointly, appellant and Stevens moved to suppress the evidence obtained at the lineup. At the hearing on the mo-tion, a misunderstanding among counsel resulted in the production of evidence re-lating only to the legality of the arrests, not to the circumstances of the lineup. The motion was denied. Appellant's and Stevens' cases were subsequently severed

5. Of two more witnesses, one died of unre-lated causes before the trial, and the oth-er, a clerk with the company, did not testify because he was unable to identify either of the two men.

6. At the time, appellant, seemingly coat-less and hatless—though it was early January—was wearing a blue pullover shirt, dark blue pants, black shoes, but neither the leather jacket nor the brown hat mentioned in the radio run.

and separately tried. Prior to appellant's trial, however, a hearing, pursuant to Stovall v. Denno,[7] was held to determine whether the lineup had been so unnecessarily suggestive as to violate due process. The trial judge held that it had not.[8]

Appellant was identified at the trial by both Auxier and Dismer, who also testified to their pretrial identifications of him. Appellant testified that he resided in 802 Eye Street, Northwest, at the time, that he was asleep when the robbery transpired, that he was awakened by police sirens, and that he was dumping trash when he was arrested. As we have stated, the jury rejected his version and found him guilty as charged.

## II

■ Appellant argues that his arrest lacked probable cause and was therefore illegal. As a result, he urges, all the evidence directly attributable to appellant's detention, most importantly the lineup identifications and the subsequent in-trial identifications, should have been suppressed. In support of this contention, appellant cites a variety of facts. Officer Gavin did not actually see appellant jump or fall. Appellant was arrested in the apartment house in which he lived, and his presence in the stairwell and his crouching position could have been laid to any number of causes. Appellant's denial of guilt—that he was not "one of those hold-up men"—he says, only revealed his knowledge of the intensive and noisy search conducted in the area over a period of about an hour. Appellant did not precisely match the description furnished the police, and neither the weapons used in the robbery nor its fruits were found on his person.

We have already recounted the circumstances surrounding appellant's arrest. Both sides agree on the circumstances and the standard to be applied, but differ on the legal significance to be attached to the facts. Since Brinegar v. United States,[9] courts have resolved issues of probable cause according to the weight of "the factual and practical considerations * * * on which reasonable and prudent men, not legal technicians, act." [10] We think it clear that, by that measure, there was probable cause for appellant's arrest.

While there was a variation between the police-run description of appellant's complexion as "medium" and the description as "dark" written when appellant was booked at the stationhouse, the two descriptions of appellant's physical appearance tally in every other respect. Official radio-run descriptions, if close, will certainly help to justify an arrest,[11] and the description here was neither vague nor so general as to include a sizeable number of people.[12] And while appellant was not wearing the clothes, in particular the outer jacket, reported in

---

7. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967).

8. The judge did not rule, however, as to whether sources independent of the lineup existed for any in-court identifications which might follow. The hearing was held before our *en banc* decision in Clemons v. United States, 133 U.S.App. D.C. 27, 408 F.2d 1230 (*en banc* 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), and so the judge did not have the benefit of our suggestion there as to such a finding. *Id.* at 34, 408 F.2d at 1237. In any event, since we sustain the judge's ruling that the lineup did not impinge on due process, there is no occasion to inquire as to an independent source for the in-court identifications.

9. 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

10. *Id.* at 175, 69 S.Ct. at 1310. Bell v. United States, 102 U.S.App.D.C. 383, 386–388, 254 F.2d 82, 85–87, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

11. Bailey v. United States, 128 U.S.App. D.C. 354, 358, 389 F.2d 305, 309 (1967); Brown v. United States, 125 U.S.App. D.C. 43, 365 F.2d 976 (1966).

12. See United States v. Skinner, 412 F.2d 98, 101–102 (8th Cir.), cert. denied, 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969); Brown v. United States, *supra* note 11.

the police broadcast, this circumstance does not seem particularly damaging to probable cause, given the lapse of time between the robbery and appellant's arrest and the well-known inclination of fugitives to shed tell-tale outer garments.

Additionally, the area in which the police were searching when appellant was apprehended was circumscribed.[13] It was reasonable for Officer Gavin to assume that his fellow officers on the rooftop were correct when they told him one suspect had been captured and that the other suspect was descending the stairs. Though Officer Gavin did not see appellant jump, the dropping noise and appellant's appearance in the stairwell in a crouched position constituted strong circumstantial evidence of that fact. Appellant's volunteered exculpatory statement—that he was not "one of those hold-up men"—was also, in context, interpretable as an indication that indeed he was. There was, in sum, evidence from which a reasonable police officer could have believed that appellant was still fleeing the holdup when arrested, and that is all that was needed to authorize Officer Gavin to effect his arrest.

### III

■■ Appellant's second major contention is that his conviction ought to be reversed because the lineup at which he was identified by Dismer and Auxier was so unduly suggestive as to violate due process.[14] Since the lineup was held prior to the Supreme Court's decision in United States v. Wade,[15] appellant does not argue that he was deprived of his Sixth Amendment right to counsel. Nonetheless, as the Court held in Stovall v. Denno,[16] a companion to *Wade*, a lineup must also be invalidated where it does not comport with the fairness requirements the Due Process Clause imposes.

Just before appellant's trial began, defense counsel[17] requested a *Stovall* hearing, at which only Dismer was called to testify. He stated that prior to the lineup, he and Auxier were told by a police captain that the robbers had been caught. Shortly thereafter, he continued, he and Auxier were asked by other police officers to come to the stationhouse. There four men, all Negroes, were placed in a lineup. Dismer could not specify in any great detail how much difference there was in the men's height or age, nor could he recall whether anyone in the lineup, including appellant, had a beard or goatee. All of the four men wore dark clothes; none had on either handcuffs or the clothes, in particular the leather jacket mentioned in the police description, that appellant allegedly wore at the holdup.

While at the stationhouse, Dismer related, neither he nor Auxier conversed with the police. Each confronted the suspects separately. Both identified ap-

---

13. Mathies v. United States, 126 U.S.App. D.C. 98, 101–102, 374 F.2d 312, 315–316 (1967) ; United States v. Skinner, supra note 12, 412 F.2d at 100, 102.

14. Appellant also argues that any results of the lineup should have been excluded because the lineup delayed appellant's presentment before a United States Commissioner (now magistrate) in violation of Fed.R.Crim.P. 5(a). That contention has been answered by our *en banc* decision in Williams v. United States, 136 U.S. App.D.C. 158, 160–162, 419 F.2d 740, 742–744 (1969) that a mild delay for a pre-Wade lineup related to the offense for which the accused was arrested is not a per se violation of Rule 5(a). See also Wise v. United States, 127 U.S.App. D.C. 279, 281–282, 383 F.2d 206, 208–209 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968). In Adams v. United States, 130 U.S.App. D.C. 203, 399 F.2d 574 (1968), the court was concerned about delayed presentments occasioned by a lineup seeking identifications to link arrestees to other crimes; a reasonable delay before presentment for a lineup incidental to the same offense was allowed. United States v. Quarles, 387 F.2d 551, 555 (4th Cir. 1967), cert. denied, 391 U.S. 922, 88 S.Ct. 1815, 20 L.Ed.2d 659 (1968).

15. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

16. *Supra* note 7.

17. Not his counsel on appeal.

pellant; only Dismer identified Stevens. It took Dismer less than five minutes to make his identifications. After hearing this testimony, the trial judge denied the motion to suppress.

Appellant's due process claim had to be judged, it. is settled, by "the totality of the circumstances." [18] Here the only element raising the possibility of suggestiveness was the police captain's comment that the robbers were in custody. But the mere fact that a witness is requested to view a lineup unavoidably suggests that the police feel that someone in the lineup is suspected; and over and against the captain's comment are all of the other aspects of the lineup here [19] which tended to preserve its objectivity. The searching inquiries at the hearing brought out all of the salient details, and the trial judge, appraising the evidence, could see no Fifth Amendment violation. Extending to the judge the deference due,[20] and finding ample support on the record, we affirm his ruling that the lineup did not infringe due process.[21]

### IV

■ Appellant's last point concerns the admissibility into evidence of two pistols allegedly used in the robbery and the alleged $205 proceeds. These items were not found on appellant's person or within the area of his control but, as we have pointed out, were uncovered during Stevens' arrest.

Defense counsel made timely objection to introduction of the pistols and money prior to the testimony of the officers who arrested Stevens. A discussion was held at the bench and the prosecutor, in support of her argument for admissibility, stated that the Government would prove that the Stevens the officers arrested and the Stevens identified by Dismer at the lineup were one and the same person. The Government never fulfilled that promise, and appellant relies on that fact to show that the trial judge should not have let the pistols and money in.

As the judge stated during the bench colloquy, however, there was an alternative basis for their admission. If other evidence revealed that Stevens and appellant cooperated at the scene of the crime, the jury could find that they were co-participants, and the evidence with which Stevens was associated could, therefore, be introduced against appellant. In so concluding, the judge divined

18. Stovall v. Denno, *supra* note 7, 388 U.S. at 302, 87 S.Ct. 1967; Simmons v. United States v. Allen, 133 U.S.App.D.C. Ct. 967, 19 L.Ed.2d 1247 (1968) ; Foster v. California, 394 U.S. 440, 442, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969).

19. See Clemons v. United States, *supra* note 8, 133 U.S.App.D.C. at 41–43 n. 16, 408 F.2d at 1244–1246 n. 16. See also United States, 390 U.S. 377, 383, 88 S. 84, 85–86, 408 F.2d 1287, 1288–1289 (1969).

20. See Clemons v. United States, *supra* note 8, 133 U.S.App.D.C. at 33, 38, 39, 408 F.2d at 1237, 1241, 1242.

21. Appellant, charging that the *Stovall* hearing left the makeup of the lineup unclear, suggests a remand for a more complete investigation, with the Government producing all evidentiary details and demonstrating that the lineup in all respects was fair. We must mention, at the outset, that we do not understand the trial judge's *Stovall* ruling to rest upon a deficient presentation of the relevant facts or upon a failure to meet a burden of proof assumed to be upon the accused. Moreover, there is nothing in the record to indicate that the sources of the lineup information now sought were not accessible to the defense at the time. Rather, the record discloses that defense counsel did not exhaust the obvious possibilities: only one witness, Dismer, was called to testify; another, Auxier, was ignored; and no attempt was made to elicit the names of the police officers conducting the lineup. We have discerned no restriction upon counsel's endeavors at the hearing; indeed, he was indulged wide latitude, and his examination of Dismer was thorough and comprehensive. When the examination was completed, counsel rested and proceeded to argue the motion, without any complaint of the sort now made. We think that, everything considered, it is far too late in the day for appellant to register it now.

the view of this court, for very recently we so held.[22]

Our examination of the trial record discloses that an adequate foundation to support the trial judge's theory had been laid. Dismer originally identified the pistols as resembling very closely those used at the robbery by appellant and "the little man" Stevens, who was identified by name. At still another point, Dismer testified to the presence of a second robber named Stevens and to the fact that he had identified both suspects, one of whose names, he was told, was Stevens. During the course of Officer Cornish's testimony, the $105 uncovered in the freezer was introduced into evidence, both sides stipulating that the remaining $100 had been found on Stevens' person at the stationhouse.

The balance of appellant's argument boils down to this: no connection had been forged between Stevens and appellant prior to the introduction of the disputed evidence; and at no time was it established that the Stevens arrested by Officers Short and Cornish was the Stevens identified by Dismer at the lineup. In both respects, we find the argument lacking. On the first point, it has long been held that the order in which evidence is presented is in the discretion of the trial judge.[23] We note no abuse here, and in any event, the record shows, as mentioned above, that evidence had been introduced prior to admission of the

pistols and money to show that both men had active roles in the robbery. On the second point, identity of last names is evidence of actual identity,[24] and that evidence was unrebutted here. The trial judge's ruling, then, was correct, and the significance of the pistols and the money became a matter for the jury.[25]

The conviction is accordingly

Affirmed.

---

22. Sutton v. United States, 140 U.S.App. D.C. ——, 434 F.2d 462 (D.C.Cir. 1970).

23. See, *e. g.*, McDonald v. United States, 77 U.S.App.D.C. 33, 133 F.2d 23 (1943); 6 J. Wigmore, Evidence § 1867 (3d ed. 1940).

24. 9 J. Wigmore, Evidence § 2529 (3d ed. 1940).

25. Appellant has two more strings to his bow. He argues that the pistols were improperly let into evidence merely on the basis of the two eyewitnesses' testimony that they resembled the pistols used in the robbery. Since pistols are mass-produced, this method of identification, appellant argues, does not provide a sufficient basis for admission. It is evident that this argument would make the intro-

duction of any mass-produced article difficult, if not impossible, but we need not pass upon its validity. Since the two pistols were later specifically identified by Officer Short as those found at the time and place of Stevens' arrest, appellant's objection can rest only upon the order of proof, and as to that we perceive no error. See text *supra* at note 23.

Finally, appellant contends that a question addressed to the judge by the jury during deliberations—"was money found in Mr. Thurman's apartment"—shows the importance of the admission of the money and the lack of an evidentiary connection. There was, we repeat, a sufficient connection; the apparent explanation for the jury's inquiry was that appellant lived in the building wherein Stevens was arrested.