Maurice **MARSHALL**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nos. 21703, 23578.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 20, 1970.

Decided Sept. 24, 1970.

Petition for Rehearing Denied
Feb. 17, 1971.

Mr. David S. Abrams, Washington,
D. C. (appointed by this Court) for appellant.

Mr. John D. Aldock, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, Harold H. Titus, Jr., Principal Asst. U. S. Atty., and Daniel J. Givelber, Asst. U. S. Atty., also entered appearances for appellee. Mr. Daniel E. Toomey, Washington, D. C., also entered an appearance for appellee in No. 23,578.

Before BAZELON, Chief Judge, and LEVENTHAL and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

█ Appellant was convicted of bank robbery, assault with a dangerous weapon, and carrying a dangerous weapon.[1] On appeal he challenges, *inter alia,* probable cause for his arrest and admission of the evidence obtained by the search incident to arrest, the use in evidence of photographs of himself in custody at the scene of his arrest, and the failure of the trial court to take into consideration alleged new evidence discovered which might show that the pre-trial lineup in which he was identified was unnecessarily suggestive. Believing that on the evidence in this case none of these points requires reversal, we affirm the convictions.[2]

About 1:25 p.m. on 21 July 1967 a man entered the Watergate branch of the Riggs National Bank, pointed a revolver at the bank manager and his secretary, and demanded money to fill a manila envelope. The envelope, on which was printed "Washington Hospital Center," was filled with money, some of it whose serial numbers had been previously recorded. As the robber fled by the front entrance, the manager pulled the burglar alarm. At 1:30 p.m. the doorman of the Watergate East apartments saw a man matching appellant's description hurrying down the steps to the shopping mall which leads to the Watergate parking lot located only about 100 yards from the bank. Within three or four minutes after the alarm the police arrived at the bank.

One of the policemen (Sorah) who responded to the call proceeded immediately in the direction the robber was seen to have taken toward the parking lot. There Officer Sorah was informed by a construction worker that shortly before he had noticed a man crouched, half in the door of a car. After the workman had ascertained that the man was still in the car, Officer Sorah went to the car and saw appellant lying on the floor in the rear. When he opened the door and told appellant to get out, there was no response. Sorah also inquired of appel-

---

1. The indictment in six counts charged (1) entering a federally insured bank with intent to commit robbery; (2) robbery of a federally insured bank (18 U.S.C. § 2113(a)); (3) robbery (22 D.C.Code § 2901); (4) and (5) two counts of assault with a dangerous weapon (22 D.C. Code § 502); (6) carrying a dangerous weapon (22 D.C.Code § 3204). Appellant was convicted on all counts and sentenced to separate but concurrent terms of imprisonment on each count. For our disposition as to the concurrent sentences imposed on counts 1 and 2, see *infra.*

2. Appellant also urges that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. In support of this ground appellant points to various conflicts or apparent conflicts in the testimony of prosecution witnesses,

and to the fact that only two of the five witnesses to the robbery were able to identify appellant as the robber. This argument is clearly without merit. Conflicts in testimony and credibility of identification witnesses are for the jury to resolve and are not grounds for a new trial. Under the relevant test for sufficiency of the evidence, *see* United States v. Harris, No. 22,742 (D.C.Cir. 12 Aug. 1970) (slip op. at 25); Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (1947), the proof here presented was manifestly adequate to support a finding of guilt. Indeed, as we hold *infra,* even if the identification evidence had been wholly lacking, the evidence against appellant resulting from the circumstances of his arrest was overwhelming.

lant if this was his car and received no response. The officer observed that, while appellant was perspiring profusely, his cap, trousers and shirt were completely dry. He was not wearing a belt or shoes and his trousers were unzippered. After making these inquiries and observations, Sorah pulled appellant out of the rear of the car. Underneath appellant was a brown paper bag filled with miscellaneous items of clothing. Appellant was then placed under arrest. Officer Sorah immediately asked the construction worker to go to his vehicle and radio for help.

Later there was found in the car a shopping bag containing, among other things, a hat, trousers, and gun. Also found in the car was a brown manila envelope marked "Washington Hospital Center" (where appellant later testified that the mother of his child worked) and filled with $2,440.00 in large bills. These items were identified by the bank manager and his secretary. The hat was identified by the doorman as being "very similar" to that worn by the person he had seen just after the robbery.

I

On this record we have no difficulty in saying that the police officer had probable cause to arrest appel-

lant after he had pulled him from the car. All of the events described above were compressed into an extraordinarily short space of time. Probably no more than 10 to 12 minutes elapsed from the time appellant entered the bank until the officer pulled him from the rear of the car where he was hiding not 100 yards from the scene of the crime. All visible indicia pointed to the conclusion that appellant was engaged in a fast switch of clothes interrupted by the speedy arrival of the police. Given the suspect in his unusual,[3] plainly visible condition 100 yards away from the bank in the direction the robber was seen to flee, the suspect's non-response to the officer's questions, the officer's duty was to arrest him immediately, not to trifle with this probable armed bank robber further, nor to take time to obtain a search warrant for the vehicle, which would have uncovered the remainder of the damning evidence.[4]

II

There is no more merit in appellant's contention that the photographs of him "in custody of the police," taken by newspaper photographers at the scene of his arrest, were highly prejudicial. The photographs do not show appellant in handcuffs, as alleged, but show him

3. Defendant himself admitted that at the time he crawled into the back seat of the car to lie down the temperature was in the neighborhood of 90 degrees Fahrenheit.

4. Appellant's motion to suppress this evidence in advance of trial, required by Rule 41(e), Fed.R.Crim.P., was apparently not received by the Clerk of the District Court. The Government therefore argues that appellant's Fourth Amendment claim was not properly raised below. However, Rule 41(e) also provides that "the court in its discretion may entertain the motion at the trial * * *." It is clear from the record that the District Court here exercised its discretion to entertain appellant's motion to suppress during the trial, at least with respect to those seized items not yet introduced in evidence at the time the motion was made. The Government cites

Washington v. United States, 134 U.S. App.D.C. 223, 414 F.2d 1119 (1969) (per curiam) to the effect that where, because of the defendant's failure to raise the issue, "the government has had no occasion to develop comprehensively the facts specifically referrable to probable cause," in deciding whether the absence of a showing of probable cause in the record constitutes "plain error," this Court can take into account that the probability that probable cause was lacking was slight. The instant case is clearly distinguishable from *Washington*, however, because there the issue of probable cause had been raised neither before nor during trial, thus making the discretionary "plain error" standard of review applicable. Rule 52(b), Fed.R.Crim. P. On the other hand, in this case the objection was made at trial and the trial judge found probable cause on the merits, thus preserving the question for direct review.

standing with the police officers on the parking lot. Aside from the fact that appellant had both hands behind his back, a pose frequently assumed by, among others, some well-known public figures, there is nothing whatever to indicate he was being restrained by the police or placed in an undignified position. Appellant did not object to the introduction of the photographs at trial.[5] Thus, even assuming the photos could properly have been excluded, we do not think that their unopposed introduction here constituted "plain error." [6]

### III

We turn now to appellant's argument that he was denied his constitutional right of due process under the Fifth Amendment because the identification lineups to which he was subjected were suggestive and conducive to irrevocable mistaken identification,[7] in accordance with the Supreme Court precepts set forth in Stovall v. Denno.[8]

The established facts in regard to the lineup are these. Appellant was placed in a seven-man lineup at about 4:30 p.m. the day of the robbery, i.e., within three hours after he had left the bank. The bank manager and his secretary identified appellant in the lineup and at trial. The Watergate doorman was unable to make any positive identification. A bank customer and the bank teller picked someone other than appellant at the pre-trial lineup.[9]

On the basis of what appellate counsel described as "new evidence," i.e., notes made at the lineup and affidavits newly made by the Legal Aid attorneys who had been present at the lineup on appellant's behalf, appellant moved for a new trial claiming that the lineup had been suggestive and prejudicial in violation of the standards set by the Supreme Court in Stovall. The trial court denied appellant's motion on the grounds that appellant had "not sustained his burden of demonstrating that he made diligent efforts to procure this new evidence at trial. He has not explained, for example, why trial counsel could not have discovered the notes through the same procedure used by present counsel."

The fault with the ruling of the trial court here is that appellant, if he has anything to complain about on this point, can complain that his constitutional right to due process under the Fifth Amendment has been denied him. Such alleged infringement of his constitutional rights could be raised by a collateral attack at any time subsequent

---

5. Indeed, as the Government points out in its brief, appellant admitted his presence and his arrest at the scene reflected in the photographs.

6. Rule 52(b) Fed.R.Crim.P.

7. This ground was not an issue at trial and hence could not be raised by appellant on his appeal from the judgment of conviction in No. 21,703. It is raised in No. 23,578 on appeal from the denial of a motion for a new trial based upon newly discovered evidence. *See* Hamilton v. United States, 78 U.S.App.D.C. 316, 140 F.2d 679 (1944). We ordered these appeals consolidated for hearing.

8. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967).

9. Appellant was represented by "substitute" counsel from the Legal Aid Agency at the time of the lineup. *See* United States v. Wade, 388 U.S. 218, 237, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ; United States

v. Kirby, 138 U.S.App.D.C. 340, 343, 344, 427 F.2d 610, 613, 614 (1970). Subsequently this attorney left the Legal Aid Agency and in fact left the country. At the time of trial appellant's trial counsel was unable to locate any notes or obtain any observations of the lineup made by the "substitute" Legal Aid counsel. The Government made available its entire file to appellant's trial counsel, and there was nothing therein to indicate any description of the lineup which would give grounds for appellant's trial counsel to challenge it at that time as being an unduly suggestive denial of due process under *Stovall*. Subsequently, appellant's counsel on appeal pursued the matter and came up with affidavits by the two Legal Aid attorneys who had been present on behalf of appellant at the lineup. These affidavits were based on their notes made at the time, which were discovered by appellate counsel in the Legal Aid Agency files after the trial.

to the conviction becoming final.[10] If appellant can attack his conviction collaterally, his counsel's lack of diligence at time of trial should be no barrier to considering a motion for a new trial on the merits of the constitutional grounds raised.[11]

■■ On the merits, however, even if appellant were successful in establishing on what is still a rather murky and conflicting argument that the pre-trial lineup was suggestive and unfair,[12] on the record in this case we cannot find that such an error, if it occurred, calls for reversal. Granting that a constitutional right is involved here, Chapman v. California[13] clearly held that constitutional error can be harmless and not require reversal. In so doing the Supreme Court said: "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[14] And, although "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," not all "trial errors which violate the Constitution automatically call for reversal."[15] Although on the facts of Chapman the Supreme Court did not declare a belief that the error there was harmless beyond a reasonable doubt, yet even more recently in Harrington v. California[16] the Supreme Court did so find in a case where a co-defendant had been denied his rights under the confrontation clause of the Sixth Amendment by two confessions of his co-conspirators being admitted into evidence, when those two co-defendants did not take the stand to testify in their own defense. The Supreme Court described the situation in Harrington in language very descriptive of that in the case at bar:

> They [the two co-conspirators] did place him at the scene of the crime. But others, including Harrington himself, did the same. Their evidence, supplied through their confessions was of course cumulative. But apart from them the case against Harrington was so overwhelming that we conclude that this violation of * * * [the right of confrontation] was harmless beyond a reasonable doubt, unless we adopt the minority view in Chapman * * * that a departure from constitutional procedures should result in an automatic reversal, regardless of the weight of the evidence. It is argued we must reverse if we can imagine a single juror whose mind might have been made up because of [the co-conspirators'] confessions and who otherwise would have remained in doubt and unconvinced. *' * * Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. * * *

---

10. Womack v. United States, 129 U.S.App. D.C. 407, 395 F.2d 630 (1968).

11. Thus we are of the view that the "due diligence" standard which ordinarily governs disposition of motions for a new trial based on alleged newly discovered evidence, see Thompson v. United States, 88 U.S.App.D.C. 235, 188 F.2d 652 (1951), should not apply when the new evidence raises issues which challenge the constitutional validity of the conviction. Cf. the standard established by Fed.R.Crim. P. 52(a) for disregarding ordinary trial errors as "harmless" as contrasted with the higher standard which the Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), has held must be applied in judging the harmlessness of constitutional error.

12. Appellant argues that the other persons in the lineup were of dissimilar appearance; that there were some variations in the required phrases recited; and that the shifts in the position of the persons to be identified were suggestive, to some of which appellant's counsel at the lineup objected at that time.

13. 386 U.S. 18, 87 S.Ct. 824 (1967).

14. Id., at 24, 87 S.Ct. at 828.

15. Id., at 23, 87 S.Ct. at 828.

16. 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 2d 284 (1969).

By that test we cannot impute reversible weight to the two confessions.[17]

Evaluating the circumstances under which appellant Marshall was arrested, crouched in the rear of someone else's car on a parking lot, 100 yards from the bank, in the same direction the robber was seen by several witnesses to have fled, within 10 minutes of the commission of the crime, perspiring profusely but with a complete change of dry clothes partially donned, with other clothes, hat, gun, envelope and marked bills all present with the appellant, we cannot conceive that an average juror's mind would have been made up by the eyewitness identification of the bank manager and his secretary. This being so, under the rule of *Harrington* and *Chapman,* the testimony regarding the pre-trial lineup and the admission in evidence of the two identifications made at the trial, even if the lineup were improperly suggestive (which we have not found), would constitute harmless error in this case.[18]

Thus, it is not necessary to remand the case for a hearing on the merits of appellant's newly discovered evidence claim. Moreover, it is to be noted that although the Government offered testimony of the bank manager concerning his pre-trial viewing of appellant in the lineup, it confined itself to offering only the in-court identification by the bank manager's secretary, Miss Arroyo. Appellant's own trial counsel brought out the fact from each of the two witnesses that he or she had without hesitation identified the appellant in a police lineup within about three hours after the robbery. On this state of facts, absent a determination of harmless error, the question presented with respect to Miss Arroyo's testimony would be whether the courtroom identification had an independent

17. *Id.,* at 253–254, 89 S.Ct. at 1728.

18. There is a further potential infirmity in the circumstances surrounding the lineup identifications in the instant case, not specifically raised by appellant, which, had we not found the use of identification testimony to be harmless error in any event, we would be inclined to notice *sua sponte.* Appellant was arrested and placed in the lineup subsequent to the Supreme Court's decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). He was therefore entitled to counsel at his lineup, under the Sixth Amendment as therein interpreted. Under the *Wade* formulation a primary purpose for counsel's presence at the lineup is to preserve the accused's ability to confront and cross-examine identification witnesses, by ensuring that counsel is aware of the circumstances under which the identification took place. In this manner trial counsel is provided with the information necessary to challenge the credibility of the identification by eliciting any suggestive aspects of the lineup. The *Wade* opinion recognizes that "substitute" counsel may be utilized at the lineup to preserve the basis for "meaningful confrontation at trial," especially where the lineup is held a short time after arrest, before the appointment of regular counsel. Furthermore, one part of such substitute counsel's function is, as we have recognized, to fill the "need for testimony in behalf of the defense at trial as to the circumstances surrounding the line-up." United States v. Kirby, 138 U.S.App.D.C. at 343, 427 F.2d at 613 (1970). Where the Government elects to use "substitute" counsel to satisfy an accused's Sixth Amendment rights, it may well be incumbent upon the prosecution to ensure that the observations and opinions of the substitute counsel are transmitted to the accused's subsequently appointed trial counsel. Under this view, the "diligence" of the trial counsel in learning of events at the lineup is not particularly relevant. Unless the Government takes affirmative action to provide trial counsel with the report of substitute counsel's observations, the defendant may be denied his Sixth Amendment right to effective assistance of counsel. *Cf.* Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966).

Nevertheless, we are not required to decide whether, under the circumstances here, the prosecution was under a duty to ensure that appellant's trial counsel had access to the details of the observations made by the substitute counsel at the lineup. As we have held *supra,* with respect to appellant's *Stovall* claim, even if the introduction of the identification testimony against appellant were erroneous, such error was harmless beyond a reasonable doubt in view of the other untainted evidence against appellant.

origin distinct from the identification at the lineup, which for the purpose of argument at this point we may assume to have been suggestive. The Supreme Court in *Wade* stated in remanding that case that the Government should be given a chance to prove that the in-court identification was "based upon observations of the suspect other than the line-up identification." [19]

The fact that the lineup here was held within such a short time after the crime itself would pose subtle difficulties for the trial court in any attempt to determine whether the in-court identification by Miss Arroyo could have been tainted by the lineup, even assuming it was suggestive. It appears to us that the most dangerous suggestivity in an improper lineup comes from a lineup which is held a considerable period after the crime in question.[20] Then, if there is improper suggestion in any form, the witnesses would seem to be much more apt to take their in-court identification from their most recent identification of the defendant, *i.e.*, at the lineup held recently. This was certainly not the situation in the case at bar.

Nevertheless, since we have determined that any error in the admission of the testimony of *both* identification witnesses was harmless, we need not reach

the question of the necessity of a remand hearing as to Miss Arroyo's identification, involving as it does imponderable assumptions concerning the nature of the human perception, recognition and memory processes.

## IV

Finally, we have noted that appellant was convicted and sentenced to concurrent terms of imprisonment on counts 1 and 2 of the indictment which charged, respectively, entering with intent to rob and robbery under the Federal Bank Robbery statute, 18 U.S.C. § 2113(a). Under prior holdings of this Court such sentencing was plainly improper because the lesser offense of entry with intent merges into the completed robbery where that latter offense is proved. Bryant v. United States, 135 U.S.App.D.C. 138, 417 F.2d 555 (1969). Appellant may suffer various detrimental collateral consequences as a result of being thus improperly sentenced on these multiple counts. *Cf.* Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

We therefore affirm the convictions on counts 2 through 6,[21] set aside the conviction and sentence on count 1, and vacate the sentence and remand for resentencing on count 2.

19. 388 U.S. at 240, 87 S.Ct. at 1939. *Wade* involved the use of in-court identification testimony where prior out-of-court identifications were improper because the accused was denied his Sixth Amendment right to counsel. We have similarly held that the prosecution is entitled to show that the in-court identification had an independent basis where the defendant has been subjected to a pre-trial identification proceeding that violated his right to due process under the Fifth Amendment. Clemons v. United States, 133 U.S.App. D.C. 27, 408 F.2d 1230 (1968).

20. *Cf.* Russell v. United States, 133 U.S. App.D.C. 77, 408 F.2d 1280 (1969), where we held that prompt on-the-scene confrontations between a single suspect in police custody and a witness to the crime did not violate the accused's rights to

counsel or to due process because of the inherent reliability of identifications that take place immediately after the event while the witness' memory is still fresh.

21. We note further that appellant was convicted and sentenced on both count 2, robbery of a federally insured bank (18 U.S.C. § 2113(a)), and count 3, robbery (D.C.Code § 2901). Although not raised on this appeal, the legality of such multiple sentences under both federal and District of Columbia robbery statutes is presently before this court in United States v. Walter, Spears, No. 23,043. Should the *Spears* case result in a holding that such conviction and sentencing is improper, appellant will also be able to move for correction of sentence on counts 2 and 3 under Rule 35, Federal Rules of Criminal Procedure.