**UNITED STATES of America**

v.

**Philip SMALLWOOD, Appellant.**

**No. 71-1283.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 8, 1972.

Decided Nov. 9, 1972.

Mr. David Cobb, Washington, D. C. (appointed by this court), for appellant.

Mr. Charles E. Brookhart, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry, Asst. U. S. Atty., and Daniel E. Toomey, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

ROBB, Circuit Judge:

Appellant was convicted by a jury of armed robbery (22 D.C.Code §§ 2901 and 3202) and assault with a dangerous weapon (22 D.C.Code § 502). He was sentenced to concurrent indeterminate terms under the Youth Corrections Act (18 U.S.C. § 5010(b)). On this appeal he contends that his constitutional rights were violated when he was identified by a government witness in a line-up, and later in court. We affirm the judgment.

At approximately 1:20 P.M. on May 11, 1970, two men, one armed with a sawed-off shotgun, held up Hymie's Restaurant and Carry-Out at 4408 Arkansas Avenue, N.W., in Washington. The man with the shotgun remained at the door of the restaurant while the other man entered the store and told the proprietress, Mrs. Mary Hyman, to put the money from the cash register in a bag. She complied, placing approximately $86.00 in a bag, which the man took. She noticed that this man was short, very dark, and that his head was clean-

shaven. The robbers then left the store and escaped.

Officer Clarence Wheeler, a crossing guard at 13th and Upshur Streets, within a block of Hymie's Restaurant, knew Smallwood by sight, having seen him "in the neighborhood" twenty or twenty-five times. Shortly before 8:00 o'clock on the morning of the robbery Smallwood passed Officer Wheeler's post driving a red 1965 Corvair bearing temporary license tags numbered DX–2920. The car "had very loud mufflers" and was "going a little over the speed limit," which led Officer Wheeler to make a note of the tag number. He noticed also that there were two passengers in the car, one of whom had a clean-shaven head.

At about 1:20 P.M. on May 11, Officer Wheeler left his traffic post and headed for Hymie's for lunch. On the way he noticed Smallwood standing next to his car which was parked just around the corner from the restaurant. Smallwood "appeared to be nervous like he was waiting for someone." As the officer entered the restaurant two men ran out, one of them being the individual with the clean-shaven head who that morning had been a passenger in Smallwood's Corvair. When Mrs. Hyman told the officer that she had been robbed, he turned, followed the two men around the corner and saw them get into Smallwood's car. At this time the officer was within thirty feet of the car. Smallwood got behind the wheel and drove off at a fast rate of speed. Officer Wheeler went to a call box and reported the robbery, giving the tag number and a description of the car. A few minutes later he also furnished a description of Smallwood.

On May 11 Officer Davis and his partner were working in plain clothes as tactical officers, their duties being to gather intelligence and make observations of "things out of the ordinary." Pursuant to this assignment they were cruising in a police car in the neighborhood of Hymie's Restaurant. Officer Davis sat on the passenger side of the front seat. At about 1:20 P.M. Davis noticed Smallwood, just around the corner from the restaurant, standing next to a maroon Corvair with temporary tags DX–2920. The officers' attention was attracted because they "were trying to take special notes, especially of temporary tags" and they "knew that a lot of cars are stolen and using temp tags. . . ." Officer Davis noted the tag number and noticed that Smallwood was "acting nervous * * * standing beside the automobile looking around as if to be waiting for someone." The officers cruised approximately four blocks beyond the car, then turned back to observe the scene again, but found that Smallwood and the car were gone. Moments later Officer Davis heard the radio lookout for the robbery, with the description of the car and Smallwood. He realized immediately that the car and the man described were the car and the man he had just seen. He later testified that to the best of his recollection the description he heard was "Negro male, five foot nine inches to five foot 11 inches, dark complected, close cut hair, wearing a green pullover shirt. . . ."

On May 26, 1970, Officer Davis identified Smallwood in a lineup held pursuant to court order. Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574 (1968). Appellant's court appointed counsel was unable to be present because of illness, but substitute counsel appeared for Smallwood. Officer Davis also identified the appellant at trial.

At trial Smallwood disclaimed any knowledge of the robbery. He testified that he knew Officer Wheeler and that around 9:30 on the morning of May 11 he had driven past Wheeler, who was directing traffic at 13th and Upshur Streets. He conceded that his car was a maroon Corvair with a loud muffler, bearing temporary license tags No. DX–2920 [1] and that he was wearing a green

---

1. The tags were listed in Smallwood's name.

shirt. He said he had gone to Hymie's Restaurant at about ten o'clock and had remained there until about half past twelve when he left and went to his brother's house, arriving around one o'clock, and he then went to his mother's house. He said that before leaving Hymie's he stood beside his car for a while, watching "some kids" shooting crap.

The appellant filed a pretrial motion to suppress the identification testimony of Officer Davis. After an extended hearing the district judge overruled the motion, holding that the matter of identification was one for the jury. The appellant now challenges this ruling on several grounds. First, he says that the officer's testimony was "tainted" because he heard the broadcast description of the suspect. Second, he argues that counsel representing Smallwood at the lineup was ineffective, since he did ·not know at the time that Officer Davis had heard the broadcast and because he failed to provide trial counsel with an account of the lineup. We think the identification testimony was properly admitted.

■ The broadcast description of the appellant that Officer Davis heard coincided with the picture of the appellant that Officer Davis had in his mind from his own observation a few minutes before the broadcast. Had the officer recorded this description in his own notebook immediately after seeing the appellant, there could hardly be a valid claim that the description tainted his identification of the appellant in the lineup. That the description was recorded in a police broadcast does not change the result, for Officer Davis relied upon the image of Smallwood that he carried in his mind.

The claim of ineffective assistance of counsel is raised for the first time on appeal. At the pretrial hearing Smallwood's counsel, after noting that he had been unable to talk to the substitute lineup counsel, stipulated that he raised "no Sixth Amendment point." He said:

I do not think his [substitute counsel's] presence would add anything here. We know that Mr. Smallwood was represented and as far as possible, I believe, Your Honor, we have spread before the Court the circumstances of the lineup, so I would be willing to stipulate that Mr. Smallwood did have counsel at the lineup without in any way prejudicing the motion.

Nevertheless, we have carefully examined the record bearing on the appellant's claim of ineffective assistance, and we conclude that the appellant was not prejudiced.

■■ Substitute counsel at a lineup satisfies the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). See United States v. Neverson, 150 U.S. App.D.C. 133, 463 F.2d 1224 (1972); United States v. Randolph, 143 U.S. App.D.C. 314, 317, 443 F.2d 729, 732 (1970); United States v. Kirby, 138 U. S.App.D.C. 340, 344, 427 F.2d 610, 614 (1970). Here substitute counsel was present and the "lineup sheet," which was in evidence, shows that he was "satisfied with position and appearance of line-up." A photograph of the lineup, which is before us, demonstrates that his satisfaction was justified. The lineup consisted of ten Negro males, including Smallwood. Smallwood wore a white shirt, not a green shirt, and at least six men in the array fitted his general description. There is not the slightest indication of any attempt to rig the lineup by including persons whose descriptions were unreasonably different from the description of Smallwood. As we said in Patton v. United States, 131 U.S.App.D.C. 197, 200, 403 F.2d 923, 926 (1968), "[t]here is no challenge of any kind to the authenticity of the photograph, and its effect is decisive." See United States v. Queen, 140 U.S.App.D.C. 262, 263, 435 F.2d 66, 67 (1970). We are at a loss to know what change in the lineup could have been requested by counsel if he had known of

the broadcast description of the appellant.

Counsel argues that in describing the appellant, Officer Wheeler noted the presence of scars on the appellant's face, and counsel concludes that this description might have cued Officer Davis in his identification. Officer Davis, however, made no reference to such scars, and apparently did not rely upon them when he identified the appellant. Moreover, and more important, the photograph of the lineup does not show Smallwood's scars, although blemishes are visible on the faces of the men standing on either side of him.

The circumstances surrounding the lineup were exhaustively explored in the suppression hearing. As the appellant's trial counsel then stated, they were "spread before the Court." Trial counsel had available to him the full description which had been broadcast, the names of all the identification witnesses, the lineup sheet and the photograph of the lineup. Every detail of the lineup was developed by counsel's cross examination. We cannot fault his judgment that the presence of substitute counsel, or consultation with substitute counsel, would have added nothing. Failure to communicate with substitute counsel would have been of consequence if he had significant information to communicate. There is no indication, however, that substitute counsel had such information, and any suggestion that he did must be founded on sheer speculation and surmise.[2]

■ We note also that Officer Davis, a trained observer, testified that on the day of the robbery he saw the appellant from a distance of from five or ten feet, and made a mental note of his description—a note that subsequently proved accurate. He testified that "I see a face and I never forget it. [I]t stays with me . . . ." There was therefore a substantial basis for the conclusion that the officer's identification of the appellant at trial derived from a source independent of the lineup.[3]

The judgment is affirmed.

BAZELON, Chief Judge, concurring:

Appellant's court-appointed attorney appeared at a suppression hearing on the day of trial totally ignorant of the circumstances surrounding the subject of that hearing:[1] an identification lineup conducted after the preliminary

2. The facts distinguish this case from Marshall v. United States, 141 U.S.App. D.C. 1, 436 F.2d 155 (1970) and United States v. Johnson & Estes, 147 U.S.App. D.C. 31, 452 F.2d 1363 (1971) cited in the concurring opinion. In each of these cases the appellant filed affidavits tending to show that the lineup in which he was identified was suggestive and unfair, that substitute counsel made appropriate objections, but that trial counsel was unaware of these facts.

3. That Officer Davis was aware that a suspect in the robbery was to be in the lineup did not make the lineup suggestive. United States v. Thurman, 141 U.S.App. D.C. 126, 130, 436 F.2d 280, 284 (1970).

1. In response to the prosecutor's inquiry as to whether counsel was present at the lineup, the following colloquy took place:
    Mr. Lynch [defense counsel]: I was under Court order to be present at the lineup but, I believe it was the order of Judge Burka. However, I was ill that evening and I wasn't able to be present at the lineup. I viewed a photograph of the lineup and I viewed the lineup list, but I was unable to appear and actually be counsel to Phillip Smallwood at that lineup. However, I am sure that following their usual practice they substitute counsel, most probably the Public Defender, but I was unable to appear at the lineup. The list does not reflect who was counsel at the lineup.
    Mr. Toomey [prosecutor]: Well, my indication is Joseph Lynch.
    Mr. Lynch: I was supposed to be there, Your Honor, but I was ill that evening. I was not.
    Mr. Toomey: Did you inform anyone, Mr. Lynch?
    Mr. Lynch: Well, I spoke to a girl and I said I wasn't there and who actually was and she said, "I don't know" and I said "Is there any way I could find out?" and she said, "I don't know."
    Tr. 19–20.

hearing.[2] The *motion to suppress* was denied, and trial began immediately. The identification at the lineup, and an in-court identification, were admitted, and appellant was convicted.

In order to decide the Sixth Amendment issue in this case, we must determine why trial counsel lacked this information. If the lineup had been held in the absence of any attorney, United States v. Wade[3] would require that we reverse.[4] But, when Smallwood's attorney failed to appear for the lineup, appellant was provided a substitute, albeit in a rather haphazard fashion.[5]

*Wade* suggested,[6] and we have expressly held,[7] that substitute counsel sat-

isfies the constitutional requirement, but only if it "eliminate[s] the hazards which render the lineup a critical stage for the presence of the suspect's own counsel."[8] The Court specified two such hazards in *Wade*: the occurrence of prejudice at the lineup, and the absence of a meaningful confrontation at trial if counsel is ignorant of such occurrences.[9]

If the Government, after providing substitute counsel, fails to make reasonably available to trial counsel either the substitute counsel or the observations he made at the hearing, the second of those hazards continues unabated. Thus the rule of *per se* exclusion established in *Wade* would still apply.[10]

2. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (U.S. June 7, 1972) limits the Sixth Amendment right to counsel to events occurring after the "initiation of judicial criminal proceedings." Id. at 689, 92 S.Ct. at 1882. But *Kirby's* citation of Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), makes it clear that the right does attach by the time of the preliminary hearing.

3. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

4. True, *Wade* would permit the Government to resurrect the in-court identification if it could show an independent source. But Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), would render the testimony relating to the lineup identification automatically inadmissible. And no suggestion has been made that admission of either identification was harmless. *See* Marshall v. United States, 141 U.S.App. D.C. 1, 436 F.2d 155 (1970).

5. The record discloses only that ten individuals, each with his own attorney, were listed for the lineup; that a number of the attorneys' names were crossed off the list; and that the names of attorneys already present on behalf of one subject were entered in place of those deleted. It thus appears that some of the attorneys present were representing, perhaps without prior knowledge, as many as four participants in the lineup.

6. 388 U.S. at 237, 87 S.Ct. at 1933.

7. *See, e. g.,* United States v. Kirby, 138 U.S.App.D.C. 340, 427 F.2d 610 (1970).

8. 388 U.S. at 237 n. 27, 87 S.Ct. at 1938 n. 27.

9. Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was "as much entitled to such aid [of counsel] . . . as at the trial itself."
*Id.* at 236–237, 87 S.Ct. at 1937 (footnote omitted).

10. While there is no express holding on this point in this Circuit, our opinions have made our concern with the problem clear:
Where the Government elects to use "substitute" counsel to satisfy an accused's Sixth Amendment rights, it may well be incumbent upon the prosecution to ensure that the observations and opinions of the substitute counsel are transmitted to the accused's subsequently appointed trial counsel. Under this view, the "diligence" of the trial counsel in learning of the events at the lineup is not particularly relevant. Unless the Government takes affirmative action to provide trial counsel with the report of substitute counsel's observations, the defendant may be denied his Sixth Amendment right to effective assistance of counsel.
Marshall v. United States, 141 U.S.App. D.C. 1, 6 n. 18, 436 F.2d 155, 160 n. 18 (1970); *see* United States v. Johnson & Estes, 147 U.S.App.D.C. 31, 452 F.2d 1363 (1971).

But, there is no indication in this record that the Government failed that duty either. Indeed, inferences to the contrary may be drawn from trial counsel's silence. Trial counsel had been appointed prior to the preliminary hearing; he was present at that hearing when both the lineup and his personal presence at the lineup were ordered by the court; he later moved for discovery of the events surrounding the lineup; he made no objection to the Government's discovery in response to that motion; and he moved for, and received, a suppression hearing on the lineup identification. At no time did he complain that he lacked reasonable access to the substitute.

The Sixth Amendment inquiry does not end with *Wade*, however. If trial counsel's ignorance is not traceable to the Government, we must still inquire whether his performance constituted ineffective assistance of counsel. This record shows that he inexcusably lapsed.[11] He had no information at the hearing concerning the events surrounding the lineup,[12] and he made no request for a continuance of the trial. Moreover, the record suggests that his acquiescence at the hearing stemmed from an improper desire to avoid censure for his lack of preparation.[13]

I agree with the court that this record does not show a substantial defect in the identification procedures themselves. Although the trial judge was clearly troubled by the lineup, his inquiry ended with the question of the presence of substitute counsel.[14] We do not, thus, have a clear showing of "prejudice" in the very harsh sense applied in the early collateral attack cases involving ineffective assistance.[15]

I believe that there is a strong case to be made for reversal here without such a showing. Conceivably, a fully informed attorney could, as a "tactic," decide not to challenge an identification. But an attorney who learns nothing of substitute counsel's observations and knowledge of the lineup deprives his client of his only chance to be sure of a "meaningful confrontation at trial," [16] as

11. Moreover, other difficulties with this attorney have come to the attention of this Court. Trial counsel was subsequently indicted for crimes that took place near in time to the trial in the instant case and was found not guilty by reason of insanity. In another case involving the same counsel, doubts as to trial performance, when coupled with the existence of a reasonable doubt as to counsel's sanity at the time of the trial, were enough to show ineffective assistance of counsel. *See* United States v. Edgerton, No. 24,927 (D.C.Cir. June 1, 1972).

12. Counsel did state that he had seen a photograph of the lineup and the "lineup list," note 1 *supra*. The lineup list indicated that he had been appellant's counsel, thus suggesting it was prepared before the lineup took place. And, in any case, the "prejudice" that spawned the *Wade* decision is precisely the "prejudice" that counsel could not detect after the fact.

13. *Mr. Lynch:* We know that Mr. Smallwood was represented and as far as possible, I believe, Your Honor, we have spread before the Court the circumstances of the lineup, so I would be willing to stipulate that Mr. Smallwood did have counsel at the lineup without in any way prejudicing the motion.
*The Court:* Well, if you are stipulating that as a matter of fact, this defendant did have counsel then of course, the Sixth Amendment proposition has been taken care of.
*Mr. Lynch:* Yes, Your Honor. And if Your Honor will note, from my motion I raise no Sixth Amendment point.
*The Court:* Yes, but you have evidence.
*Mr. Lynch:* Yes, Your Honor, yes, Your Honor—I have evidence and I think it shows it was in large part due to my dilatoriness in not quickly informing the United States Attorney of the fact that I wasn't there and for that I can only apologize to the Court and take the Court's censure.
Tr. 24–25.

14. He accepted counsel's "stipulation" that Smallwood's Sixth Amendment rights had been accorded him. Transcript 25.

15. *See, e. g.,* Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967).

16. A decision by trial counsel to learn nothing of substitute counsel's observations is, in effect, a waiver of the right

required by the Supreme Court in *Wade*.[17] On the other hand, this record is vitally deficient as to many factors that would be of importance in such a ruling, and would provide little aid in our attempts to resolve the complex questions that would be important to our subsequent disposition.

I would find it necessary to send this case back for supplementation of the record if affirmance would relegate Smallwood to post-conviction remedies. It is settled, however, that he may raise and more fully support his claims of a Sixth Amendment violation on a motion for a new trial without excusing that action with a showing of earlier "due diligence." [18]

to counsel at the lineup. Assuming that it could ever be done knowingly, it cannot be done by counsel alone. Yet, that is precisely what he purported to do here. See note 13 *supra*.

17. 388 U.S. at 239, 87 S.Ct. at 1933; *see* note 9 *supra*.

18. *See* Fed.R.Crim.P. 33; Marshall v. United States, 141 U.S.App.D.C. 1, 6 n. 11, 436 F.2d 155, 161 n. 11 (1970).