**Ray Charles CAROLINA, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–122.**

Court of Criminal Appeals of Oklahoma.

July 2, 1974.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Ray Charles Carolina, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case No. CRF–72–1881, with the offense of Murder. Lawrence Lee Breedlove, Karrole Donnie Wayne Draper and Wayne Glover were charged conjointly with him. On December 11, 1972, defendants Carolina, Breedlove and Draper were tried and found guilty of the murder of Howard Siler, with the jury imposing the death penalty on all three defendants. On March 14, 1973, this Court commuted all three sentences to life imprisonment in line with the United States Supreme Court decision of Furman v. Georgia, Jackson v. Georgia, Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (1972). From said judgment and sentence defendant Carolina has perfected a timely appeal to this Court.

At the trial James E. Turk testified that he owned a grocery store located at 3200 North Western in Oklahoma City, Oklahoma. At approximately 6:00 p. m. on August 4, 1972, he left the store, being relieved by Howard Siler who was accompanied by his wife and six year old son. Shortly before 11:00 p. m., Mr. Turk received a phone call telling him that his store had been robbed. He returned to the store and discovered $102.00 in cash was missing from his cash register. He then identified State's exhibit No. 1 as a bank bag like the one he kept at his store, but which was missing after the robbery.

Bruce Alan Cain, a 13 year old boy, testified he and his father were driving past Mr. Turk's store on August 4, 1972, and he saw a white man and two black men inside the store. The white man was standing with his arms out to his side. The black man was facing the counter and " . . . he was opening a drawer or something and bending over." (Tr. 407). Bruce told his father he thought the store was being robbed and his father drove around the block. This time Bruce saw the small

black man, who had a long black object in his hand, push the white man into a rear door. Bruce and his father drove home and the police were called. Bruce could not identify any of the defendants as being the black men in the store.

Fred Weed testified he was employed with the Oklahoma City Police Department. On August 4, 1972, at approximately 11:10 p. m., he was dispatched to Turk's store. Upon entering the store he observed three persons lying in a rear storeroom. He identified the three persons as Howard Siler, Judy Siler and Chris Siler. Each had a gunshot wound in the rear of their heads. Judy Siler was still alive while Chris and Howard were both dead. He found three spent .22 caliber cartridge casings near the three bodies. He further observed that there was no money in the cash register.

Tom Bevel testified he was employed by the Oklahoma City Police Department in the Technical Investigation Department in the criminal lab. On the evening of August 4, 1972, he arrived at Turk's grocery and took several pictures of the scene. He then identified State's exhibits Nos. 2 through 11 as being the photographs he took at the grocery. Officer Bevel further testified he searched for fingerprints but was unable to find any he could relate to any of the defendants.

Don Rogers testified he was employed as Lieutenant in charge of the Crime Lab for the Oklahoma City Police Department. On August 4, 1972, at approximately 11:35 p. m., he arrived at Turk's grocery and received three spent .22 caliber cartridge cases from Officer Bevel. He further testified he received three bullets from Dr. Marshall, which were removed from the heads of the Siler family. He delivered all three of these items to Ray Lambert of the Oklahoma Crime Bureau.

Jimmy L. Woodie testified he was employed as Patrol Officer for the Oklahoma City Police Department. On August 7, 1972, he arrested defendant Carolina on the charge of Murder. Officer Woodie advised the defendant of his constitutional rights and then asked Carolina if he understood them, to which Carolina replied that he did. Carolina then told Officer Woodie that he was present at the store and knew the person who had done the shooting.

Bill F. Snipes, Police Officer with the Oklahoma City Police Department, testified that on August 7, 1972, he interrogated Carolina, after giving him his Miranda warnings. Carolina related to Officer Snipes that he and three others robbed Turk's store. Carolina was carrying a sawed off .22 caliber rifle and the two others who entered the store with him were carrying pistols. A man, woman and a small boy were shot during the robbery. After the robbery the four went to a girl's house and divided the money. Each of the men then gave the woman five dollars.

Adam Knight, Police Officer with the Oklahoma City Police Department, testified that on August 7, 1972, he interrogated defendant Draper, after first advising him of his constitutional rights. Draper related four different versions of his whereabouts on the night of August 4, 1972. Draper, in his fourth version, related the following:

"A. He said that the suspects had come over to his girl friend's house and picked him up along with two other suspects and that this one suspect had plans already including a robbery up in the northwest part of town. He didn't know exactly where it was at. He said they drove up there and being in the area of 32nd and North Shartel the three of them, him and two other suspects walked into the store with him being the first one into the store. He said he walked up to the counter and asked the attendant for a pack of Winston cigarettes. He said that other suspect then walked around him towards the back of the store and pulled out a pistol and made a statement—I believe it was, 'This is a holdup.' And, he was then told by the other suspect to take this woman and child into

the back room, while the other suspect with the pistol, then walked behind the counter and started taking the money out of the register and placing it in a paper sack. He said the suspect told him to watch the people in the back room. He said while he was watching the people in the back room he was also watching the suspect, behind the counter, with the pistol, getting the money out of the cash register. He said that that suspect then asked Mr. Siler, being behind the counter with him, where the rest of the money was. At which time he observed the suspect put what appeared to be a blue or a green bank sack or bank bag into a paper sack. He then said that he then got the—he then asked the lady that was in the back room where her purse was at. And, he said that the lady replied it was on the counter underneath, underneath the counter. He said, 'Well, forget about it.'

"He said then, a suspect walked the —Mr. Siler back to the back room and upon Mr. Siler passing by him, he observed the suspect strike him on the head with the pistol. He said that he then observed the suspect make the other— the three victims lay on the floor. And, observed the suspect fire once over the woman's head, missing her, at which time he stated he then left, run out of the store and heard three shots as he was running out of the store." (Tr 492, 493 and 494)

Officer Knight further testified that he interrogated defendant Breedlove after advising him of his Miranda warnings. Breedlove then told Officer Knight that he and three other persons robbed Turk's grocery store. During the course of the robbery the Siler family was forced to go into a rear room of the store. Breedlove heard four shots as he was leaving the store. The four then drove to a girl's house where the money was divided. Thereafter Breedlove took Officer Knight to his brother's residence located at the Canton Hotel in Oklahoma City, Oklahoma, where a .22 caliber pistol was recovered. Officer Knight then identified State's exhibit No. 17 as the .22 caliber pistol that was recovered.

George A. "Buddy" Burns next testified for the State that he was employed as a detective, Robbery-Homicide Division, for the Oklahoma City Police Department. Officer Burns was taken to 1624 Northwest 35th Street, Oklahoma City, Oklahoma, by defendant Carolina, where State's exhibit No. 1, a bank bag, was recovered. Officer Burns then identified State's exhibit No. 1 as the bank bag he recovered. Officer Burns further testified that defendant Draper took him to his (Draper's) grandmother's residence where a .38 caliber pistol was recovered. Burns then identified State's exhibit No. 18 as the .38 caliber pistol he recovered at Draper's grandmother's residence.

Oscar Breedlove, defendant Breedlove's brother, testified his brother, defendant Breedlove, gave him a .22 caliber pistol on August 4, or August 5, 1972.

Calvin Murphy testified he was with defendant Breedlove and defendant Draper on the afternoon of August 4, 1972. At this time defendant Breedlove fired State's exhibit No. 18, and defendant Draper fired State's exhibit No. 19. Defendant Draper said he was going to pull a robbery.

Murphy further testified that the following day he saw defendant Draper and he (Draper) told him ". . . he pulled a robbery. He got clean away and was going to pull another one." (Tr 568)

Charles Marshall testified he was a licensed medical doctor in the state of Oklahoma and a consultant pathologist with the Medical Examiner's Office for the State of Oklahoma. He further testified he performed a postmortem examination on the body of William Howard Siler on August 5, 1972, and removed a bullet from the head of the body. In Dr. Marshall's opinion the cause of death was the result of a gunshot wound to the head with death being close to instantaneous.

Edward Charles Ellis Hishaw testified that in the early morning hours of August 5, 1972, defendant Carolina came to his house, showed him some money and said he had robbed a store, and that during the course of the robbery some people had been shot. Hishaw further testified that defendant Draper arrived at his house shortly after defendant Carolina and was in possession of some money and a pistol.

Vernice Marie Bailey testified that shortly before she heard about the robbery at 31st and North Western, defendant Draper, Carolina and two other men came by her house stating that they wanted to talk. After being admitted, Miss Bailey and the four men talked. Thereafter, they left Eighteen dollars and ten cents on her coffee table and then left her house.

Wayne Glover testified he was a co-defendant in this case and had not been promised anything to testify. Defendant Glover knew defendants Carolina, Draper and Breedlove. On August 4, 1972, at approximately 9:30 p. m., he met the other three defendants at one Bob Porter's residence located on Southeast 15th Street. Defendant Glover asked defendant Breedlove to take him over to his grandmother's home. Defendant Glover got into the car and passed out, as he had been drinking most of the day. He woke up as the car stopped on a dark street. The other three defendants left the car and soon returned, "walking fast." (Tr 670) Defendant Breedlove got in the driver's seat and defendant Draper told him (Breedlove) to drive to a girl's house. Glover saw a .22 pistol on the front seat after Breedlove had gotten into the car. Upon arriving at the girl's house, all four went inside to the dining room table where Glover saw Draper place a .38 pistol and a money bag on the table. Breedlove pulled a pistol from his belt and placed it on the table. Glover also saw a "rifle type" weapon on the table near defendant Carolina. Defendant Draper then took money from the bag and divided it four ways and each defendant took a share. Draper remarked that

". . . him and Breedlove didn't leave no witnesses." (Tr 680) and "If anybody tell on me, they're going to get hurt." (Tr 681) Draper also told them to put five dollars each in the kitty for the young lady. Breedlove said they ". . . ripped off something on Western. . . . A Seven-Eleven." (Tr 683) The next day Glover saw defendant Draper and remarked to him that a seven year old boy had been shot, to which Draper replied "The boy looked older than that to me." (Tr 684)

The State then rested.

Defendant Draper testified that he knew of the Siler murders and the robbery but denied having any part in the crimes. Draper further testified to an alibi.

Emma Tracy Draper Brent, Sterling Brent, Sheila Draper and Robert Draper all testified to the whereabouts of defendant Draper on the evening of the robbery and murders corroborating Draper's alibi.

Ray Lambert, Firearm's Examiner for the State Bureau of Investigation, testified he examined the State's exhibit No. 17, a .22 caliber pistol, State's exhibits Nos. 14, 15 and 16, three bullets removed from the Siler family's bodies, and three .22 caliber cartridge cases. In his opinion the bullets were fired from State's exhibit No. 17.

Defendant Breedlove testified that he and the other three defendants rode around in his car the evening of August 4, 1972, discussing possible robberies or hot wiring of an automobile. At defendant Draper's directions he drove to the grocery store where Draper, Carolina and Breedlove went inside, with Glover remaining in the car. Carolina put the rifle on Mr. Siler and Draper ordered the woman and child into the back room, telling Breedlove to watch them. Draper then went to the counter and got the money and ordered Mr. Siler to the back room. As Mr. Siler passed Breedlove, Breedlove struck him on the head, but did not knock him out. Draper then ordered the three Silers to lie face down which they did. Draper then

grabbed Breedlove's gun, State's exhibit No. 17, and shot the three Silers.

■ The defendant's first proposition asserts that the verdict is not supported by the evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Williams v. State, Okl.Cr., 373 P.2d 91 (1962). In the instant case after careful review of the entire record, it is our opinion that the overwhelming weight of the evidence points to the defendant's guilt of the crime of Murder beyond a reasonable doubt.

■ The defendant's second proposition asserts that the punishment is excessive. We find this proposition to be wholly without merit. The defendant was assessed the death penalty by the jury and accordingly sentenced by the trial court. Thereafter, on March 14, 1973, in line with the United States Supreme Court decision of Furman v. Georgia, Jackson v. Georgia, Branch v. Texas, supra, this Court commuted the defendant's sentence to life imprisonment, that being the minimum sentence for the crime of Murder. But for the *Furman* decision, this writer would have no hesitation upholding the death sentence in the instant case as the killings in this case were clearly ·intentional, wanton, and unnecessary.

■ The defendant's third proposition asserts the trial court erred in excusing prospective jurors for cause who said they could in no event consider imposing the death penalty. It is our opinion that in so far as the sentence of death was commuted to life, this question is moot. See Wright v. State, Okl.Cr., 500 P.2d 582 (1972).

■■ Defendant's final proposition asserts that the admission of State's exhibit No. 21, that being a statement taken by the police during an interrogation of Edward Charles Ellis Hishaw, implicating the defendant in the robbery violated the rule announced in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The record reveals that witness Hishaw was present at the trial and testified to what State's exhibit No. 21 contained, thereby affording the defendant full rights of confrontation. However, assuming arguendo that the admission of State's exhibit No. 21 was error, we believe it to be harmless in view of the fact that had State's exhibit No. 21 been excluded the State's case would not have been "significantly less persuasive" and the jury would have reached the same result. See Wright v. State, Okl.Cr., 513 P.2d 1304 (1973) citing Justice v. State, Okl.Cr., 512 P.2d 1389 (1973) and Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

For all the foregoing reasons the judgment and sentence appealed from is accordingly affirmed.

BLISS, P. J., and BRETT, J., concur.