Ricky ROBINSON, Appellant,

v.

**The STATE of Oklahoma, Appellee.**

**No. F-75-754.**

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1977.

Donley & McMillin, Weatherford, for appellant,

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Ricky Robinson, hereinafter referred to as defendant, was charged in the District Court, Custer County, with the crime of Murder in the First Degree, in violation of 21 O.S.Supp.1973, § 701.1 ¶ 2, Case No. CRF–75–95. The case was tried before a jury and a verdict of guilty re-

turned. Punishment was assessed at death as provided by statute. From said judgment and sentence a timely appeal has been perfected to this Court.

Neither side disputes that the evidence in this case disclose that Rachel Clark was killed as a result of a gunshot wound during the early morning hours and during the course of an armed robbery at the Trade Winds Motel in Clinton, Oklahoma. The victim had been stabbed twice and shot once with a .38 caliber weapon, later found to be owned by Ricky Robinson. A knife blade bearing a fingerprint of the defendant was found near the body of the victim. Robinson was placed near the scene of the crime by two witnesses who conversed with him and testified that he appeared to be sober. These witnesses identified a pickup truck known to be driven by Robinson. They were also able to identify the defendant from a photographic lineup. A motel registration card, signed by Robinson with his stepfather's name and a false address and false license plate number, first connected the crime with the defendant's family. The defendant filled out this card and was the only person to register after Rachel Clark came on duty and before she died. The defendant admitted filling out the card and the handwriting expert later verified the handwriting on the card as that of the defendant. The card had been received by the victim and the time 12:54 a. m. had been stamped upon it in the course of business. A boot print also established the probable presence of the defendant. It was established that $87.00 had been taken from the possession of Rachel Clark. A visit by law enforcement officers to the residence of the defendant and with members of his family—his stepfather, his mother and his sister—resulted in a subsequent arrest of Robinson at approximately 8:52 a. m. The defendant was read his *Miranda* warnings at 8:52 a. m., and he requested an attorney. At the time of the arrest, the defendant was suffering from an apparent self-inflicted gunshot wound. The wound was in the leg and did not appear to be serious. A boot that later was matched with a boot

print at the scene was confiscated at the time of the arrest. A search of the house conducted on the basis of a signed permission to search, resulted in the production of the murder weapon; $87.00; a hat, significant for identification purposes; and ammunition. A search of the pickup truck, driven by the defendant, resulted in confiscation of masking tape. The defendant's presence at the motel was also established by cuttings of tape found in the motel room occupied by the defendant, which were matched with the roll of tape seized in the search of the pickup truck.

The defendant's assignments of error assert that the assessment of the death penalty under 21 O.S.Supp.1973, § 701.1, et seq., is unconstitutional as being cruel and unusual punishment and that the trial court erred in overruling the objections and motion to suppress evidence obtained under color of an illegal consent to search; and such evidence was prejudicial to the defendant.

We will first discuss the second assignment of error. The defense believes the fruits of the search made on the basis of what they contend was an involuntarily obtained permission to search, should have been excluded. The fruits of this search were the murder weapon, a pistol, ammunition, a hat, and the money taken in the robbery. The evidence at trial was to the effect that the defendant was arrested in his home at 8:52 a. m. and was advised of his *Miranda* rights and that he requested the services of an attorney at that time. He was immediately transported to the police station, booked and examined to determine the extent of his injuries. The defendant was asked which doctor he would like to treat him. The defendant was given a permission to search form to sign to which the defendant responded that his stepfather or mother should be consulted. The defendant was told that his stepfather had given his consent. The defendant then signed the form. It appears, from the record, that the police were able to show a written consent from the stepfather, obtained only after the defendant signed,

but that some sort of oral consent had been given earlier. The defendant's age, low intelligence, and other circumstances, including the fact that the defendant paid rent for his room, are facts that the defense raised in order to support their argument.

▆ Assuming arguendo, that the permission to search was not freely and voluntarily given and therefore the evidence obtained as a result of the search and seizure under such waiver was inadmissible, we are of the opinion that it was harmless error. We arrive at this conclusion in view of the fact that had the State's Exhibits which were the fruit of the search in question been excluded, the State's case would not have been significantly less persuasive and the jury would have reached the same result. This falls squarely within the purview of the doctrine enunciated in *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Wright v. State*, Okl. Cr., 513 P.2d 1304 (1973); *Justus v. State*, Okl.Cr., 512 P.2d 1389 (1973); and *Carolina v. State*, Okl.Cr., 524 P.2d 347 (1974).

The uncontroverted evidence established the following:

(1) The defendant was at the scene of the crime near the time the crime was committed;

(2) The defendant admitted going there and signing his stepfather's name and giving a cousin's Tennessee address and a false license tag number;

(3) Two eyewitnesses saw the defendant at the scene at the approximate time of the crime and also identified the truck the defendant was driving and testified concerning his sobriety;

(4) A boot print at the scene was matched with the boot of the defendant;

(5) The defendant's fingerprint was found on the blade of a knife found at the scene and said knife had been used to inflict two non-fatal wounds to the victim, occurring at a point in time approximately contemporaneous with the shooting;

(6) The defendant's stepfather and two other witnesses testified that the defendant owned and possessed a pistol;

(7) The victim had been stabbed and shot and the gunshot wound caused her death;

(8) The homicide occurred contemporaneous with the robbery of the motel cash register of $87.00;

(9) The defendant did not at any time deny the commission of the acts that form the basis of the charges filed against him.

The evidence of the defendant's guilt was overwhelming, and we accordingly find this assignment of error to be without merit.

This leads us to defendant's first assignment of error that the assessment of the penalty of death under 21 O.S.Supp. 1973, § 701.3, is unconstitutional, being cruel and unusual punishment, which has been decided adversely to defendant in *Riggs v. Branch*, Okl.Cr., 554 P.2d 823 (1976). In accordance with *Riggs v. Branch*, supra, however, we must modify the judgment and sentence from death to life imprisonment at hard labor.

For all of the above and foregoing reasons, the judgment and sentence is *MODIFIED* from death to life imprisonment at hard labor, and us so modified, the judgment and sentence is *AFFIRMED*.

*MODIFIED AND AFFIRMED.*

BLISS and BRETT, JJ., concur.