Thomas H. CAFFEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–622.

Court of Criminal Appeals of Oklahoma.

March 28, 1983.

As Corrected March 31, and April 6, 1983.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

CORNISH, Judge:

The appellant was convicted in the District Court of Tulsa County, of Robbery With a Dangerous Weapon, After Former Conviction of Two or More Felonies, and was sentenced to eighty (80) years' imprisonment.

Evidence at trial showed that on January 20, 1980, while Kenneth Brown and Pete Annex, part-time security officers for Casa Bonita, Inc., were picking up the previous day's proceeds at Casa Bonita in Tulsa, Oklahoma, Annex was shot and wounded by a man wearing a gray-hooded sweatshirt. Annex identified the appellant as the man who assailed him and robbed him of approximately $15,000 in proceeds. Just prior to the assault, Annex's attention had been momentarily diverted by a young woman asking for directions.

A recreational vehicle (R.V.) with a white Volkswagen attached to it was seen at the time in the parking lot where the incident occurred. On January 25, 1980, Robert Garten, a Salina, Kansas, police officer, recognized an R.V. and Volkswagen meeting this description parked at a truck stop. As he contacted the police dispatcher for a status report on the investigation, the appellant and a woman exited the R.V. and walked toward a nearby restaurant. Police apprehended the two individuals and seized $1,241 in cash from the appellant and $2,050 from the woman.

After obtaining a search warrant the officers entered the vehicles and found a suitcase containing $3,226 in small denominations, a gray-hooded sweatshirt, a box of .38 caliber ammunition, and purchase receipts from a Tulsa Safeway store dated January 19, 1980.

The defense called one witness, Dr. Terrence Luce, a professor of psychology at the University of Tulsa. Dr. Luce stated he had completed extensive research on human visual capabilities and eyewitness identification. In his opinion Pete Annex could not

have made an accurate identification of his assailant, because one's perceptual capabilities tend to diminish during a stressful situation.

### I

The appellant contends that the police lacked probable cause to arrest him for armed robbery, thus requiring the exclusion of all items seized pursuant to that arrest.

We find that at the time of arrest, the arresting officer had reasonably trustworthy information sufficient to warrant belief that the accused had committed a felony. See *Little v. State,* 627 P.2d 445 (Okl.Cr. 1981). The officer knew that an armed robbery had been committed in Tulsa, Oklahoma, by an individual meeting the description of the appellant and that an R.V. towing a white Volkswagen had been observed at the scene just prior to the robbery. The officer noticed an R.V. and Volkswagen in Salina, Kansas, five days later; and also learned from a police dispatcher that the tags on both vehicles were reported as either missing or stolen. We therefore find no error.

### II

The appellant next alleges that State's Exhibits 3 through 21 should have been suppressed as fruits of an illegal search of the vehicles.

In describing events leading up to the arrest, Officer Garten stated, "I exited, came back on 81, went over and parked behind some parked vehicles and peeked inside the camper." There is neither allegation nor indication on the record that the officer observed anything more than what was already exposed to the view of the general public. There being no showing of an expectation of privacy on which to predicate a Fourth Amendment claim, the contention that this viewing was illegal is without merit. See, *Dick v. State,* 596 P.2d 1265 (Okl.Cr.1979).

The fact that two officers briefly entered the R.V. without a search warrant subsequent to appellant's arrest was also inoffensive to Fourth Amendment rights as it was reasonable as a protective sweep for other occupants. Furthermore, the record indicates that no evidence was derived from this cursory inspection. Even the supporting affidavit for the subsequent search warrant does not rely on any information obtained as a result of this entry and examination. And, since the officers had reasonable cause to believe the vehicles were involved in the commission of a felony, the police had authority to impound the vehicles. See *Lee v. State,* 628 P.2d 1172 (Okl. Cr.1981).

We also find no merit in appellant's contention that the affidavit was constitutionally insufficient to provide the probable cause necessary to issue a search warrant. He claims that Officer Johnson's reliability and credibility must be shown on the face of the affidavit, because he has the status of an unknown informant to Officer Hindman, the affiant-officer. However, when the affidavit is based upon specific factual information given by a named and known informant, and not the tip of an undisclosed informant, details reflecting his reliability and the credibility of his information are unnecessary. *McFatridge v. State,* 632 P.2d 1226 (Okl.Cr.1981); *Wright v. State,* 552 P.2d 1157 (Okl.Cr.1976). Not only is Officer Johnson's name clearly evident on the face of the affidavit, but the affidavit is also supported by information received from the Kansas police officer, Robert Garten.

The appellant also urges that *State v. McLemore,* 561 P.2d 1367 (Okl.Cr.1977), mandates a reversal of his conviction, because the search warrant relies in part upon his possession of money discovered at the time of arrest, thereby making the search warrant dependent upon the fruits of his arrest. The instant case, however, is not governed by the ruling in *McLemore,* since the money was seized pursuant to the valid arrest.

Next, we are asked to condemn the search warrant as a "general warrant." Search warrants must describe with specificity and particularity the place to be

searched and the items to be seized. This is to ensure that a search does not extend beyond its authorized purpose, and that law enforcement officers do not engage in exploratory rummaging through personal belongings. *Jones v. State,* 632 P.2d 1249 (Okl.Cr.1981).

■ The items listed in the search warrant were:

"$15,000.00 to $20,000.00 in currency and checks, papers, money bags, receipts from Taco Bueno or Crystals business in Tulsa, Oklahoma, a .38 caliber revolver, Smith & Wesson 357 Mag., model 65, S.N. ID 8103, gray, hooded sweatshirt, ski cap."

The search warrant described with specificity the articles to be seized; therefore, the warrant was not general. The fact that articles outside of the scope of the warrant were seized does not convert it into a general warrant. Those items which were improperly seized and introduced were a box of ammunition, a briefcase, as well as photographs of these two items; a Tulsa Safeway receipt dated January 20, 1980; and a label from a package of brownies. In light of the overwhelming evidence of guilt, the average juror would not have found the State's case significantly less persuasive had this evidence been excluded. We therefore find the error to be harmless beyond a reasonable doubt. See *Robinson v. State,* 560 P.2d 1034 (Okl.Cr.1977).

### III

■ At the time of the arrest approximately $1,241 in small denominations was found on the appellant's person; $3,226 was discovered in the mobile home subsequent to the arrest. The appellant contends it was error to admit evidence that this money was seized from him, because the State could not identify the money as the cash taken in the robbery.

Before physical evidence allegedly taken in the commission of a crime is admitted in evidence, it must be sufficiently connected with the crime itself by proper identification. However, it is not necessary that such identification should positively and indisputably describe such article. If it is suffi-

ciently described to justify its admission in evidence, then the lack of positive identification goes to the weight of such evidence rather than to its admissibility. *Fortune v. State,* 549 P.2d 380 (Okl.Cr.1976). We therefore find that the trial court did not abuse its discretion in admitting the evidence.

### IV

■ Appellant insists that the trial court erred in admitting evidence of other crimes. He maintains that our holding in *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979), required the prosecutor to give him ten (10) days' notice of the intent to use evidence pertaining to the shooting of Pete Annex. Since Annex was shot by the appellant during the commission of the robbery, both offenses were so closely connected as to be part of the same transaction. See, *Dixon v. State,* 560 P.2d 204 (Okl.Cr.1977). Therefore, evidence of the shooting was properly admitted as part of the res gestae and notice was not required. See *Burks v. State,* supra.

### V

■ During the *voir dire* examination of a prospective juror the trial court asked the following question:

THE COURT: If you find from the evidence that the defendant in your mind, the defendant was not guilty by evidence beyond a reasonable doubt, could you find the defendant not guilty?

MR. MOOK: I object, Your Honor, I'm sorry, I don't mean to embarrass you, but the defendant doesn't have to prove anything. You may have worded it wrong.

THE COURT: I'll word it this way. I'll ask you this, ma'am, if you find this State has not proven their case by evidence beyond a reasonable doubt—do you understand what I've just said— can you find the defendant not guilty in this case?

The appellant argues that the trial court's questioning shifted the burden of

proof to the defense. The trial court, however, immediately rephrased the question in proper form, and the instructions given to the jury before deliberation correctly stated that the State had the burden of proof. Absent a showing of prejudice, we cannot hold that the trial court committed reversible error in asking the question which was initially in improper form.

## VI

■ Appellant next presents a combination of alleged errors in support of his contention that the trial court denied him a fair and impartial trial and effective assistance of counsel. He does not contend that any single error warrants reversal, but he suggests that his trial as a whole was not an impartial proceeding.

Aside from the allegation that the trial judge became an advocate for the State in posing questions to Dr. Luce, the appellant's challenges pertain to various rulings made throughout the trial. This Court has often held that a judge must at all times preside over trials with dignity, that he maintain decorum in the courtroom, and that he pass upon questions of law and the admissibility of evidence. He should refrain from making any statements which might tend to prejudice a defendant, or from which inferences might be drawn against a defendant; and he should rule with impartiality and say as little as possible in the trial of criminal cases. *Davie v. State,* 414 P.2d 1000 (Okl.Cr.1966). With these standards in mind, we have examined the entire record, in particular the portions concerning the alleged impropriety of the trial court, and are not convinced that the appellant was denied any substantial right.

## VII

The appellant argues the trial court erred in overruling his motion to suppress Pete Annex's identification of him. He maintains it was improper to conduct the lineup in the absence of retained counsel. Testimony from the hearing held on the motion to suppress indicates the appellant requested that his retained counsel be present at the lineup procedure. Because the police were unable to locate him, a public defender was provided as substitute counsel.

■ The United States Supreme Court, in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), held that an accused is entitled to the presence of counsel at a post-indictment lineup to insure the propriety of the identification procedure. The *Wade* Court anticipated the possible use of substitute counsel at lineups; leaving open the question whether the presence of substitute counsel would be adequate "where notification and presence of the suspect's own counsel would result in prejudicial delay." 388 U.S. at 237, 87 S.Ct. at 1938. In an accompanying footnote, the Court wrote that "[a]lthough the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel." (Emphasis original). We therefore cite with approval *United States v. Smallwood,* 473 F.2d 98 (D.C.Cir. 1972), in which it is held that substitute counsel at a pretrial lineup satisfies the requirements of *Wade.* See also, *United States v. Kirby,* 427 F.2d 610 (D.C.Cir.1970). However, when substitute counsel is used, the trial attorney should fully inform himself of what occurred at the lineup by conference with the substitute counsel. See, *United States v. Estes,* 485 F.2d 1078 (D.C. Cir.1973).

■ The record here is silent as to whether there were communications between trial counsel and the public defender concerning the lineup. It does appear that at the lineup all discussions between the police and the eyewitness were within the presence of the public defender. Furthermore, the State introduced a photograph depicting the lineup of suspects as they appeared at the time. Trial counsel extensively cross-examined the eyewitness regarding the procedure as well as the reliability of his original observation of the appellant. Without a showing that the trial

counsel was deprived of significant information because substitute counsel was used, we cannot say that the appellant was deprived of his Sixth Amendment rights. Cf., *United States v. Smallwood,* 473 F.2d 98 (D.C.Cir.1972) (*where court considered the information available to the trial counsel in concluding that no reasonable possibility of prejudice had been proven where there had not been collaboration with substitute counsel*).

### VIII

Although appellant's next assignment of error does not require modification or reversal in light of the overwhelming evidence against him, we believe the argument merits discussion.

During cross-examination of Dr. Luce, District Attorney Fallis attempted to impeach him by referring to other cases in which Dr. Luce had testified. We agree with the appellant that the prosecutor's excursion into the facts and verdicts of those cases was merely an attempt to prejudice and inflame the jury, and was not a valid method of impeachment. The District Attorney asked the following questions:

Did you not appear in a courtroom in this Courthouse and testify in the case of the State versus Benjamin Brewer in a rape and murder of a young girl and you testified as to the death penalty at that time? Did you appear as an expert witness on that point?

\* \* \* \* \* \*

You gave expert testimony as an expert witness on identification and you testified in the case of Sister Patricia Keating of the Catholic faith who was raped and a victim of arson, and you testified in that case for the defense that she probably wasn't accurate in her identification, didn't you?

Informing the jury of Dr. Luce's history of testifying for the defense in such infamous cases did not satisfy the prosecutor—he then followed the last question, over the strenuous objections of defense counsel, with this remark:

Q: As I recall, that case resulted in a conviction, didn't it?

A: Yes, sir.

■ It is proper for the trial court to allow cross-examination outside the scope of direct examination if such examination reasonably tends to explain, contradict or impeach the witness's testimony. *Boling v. State,* 589 P.2d 1089 (Okl.Cr.1979). However, testimony given in a previous trial which is entirely unrelated to the case at bar is purely collateral, *Johnson v. State,* 386 P.2d 336 (Okl.Cr.1963). The verdict of a former proceeding in which the witness testified is not germane to any issue in the instant case, including the witness's credibility. Such verdict may indicate generally which evidence was given the most weight, but it is not a judicial determination of the truth and veracity of any particular witness.

### IX

■ The appellant further claims that the trial court's refusal to give his requested cautionary instructions regarding eyewitness identification was error. The facts in this case establish that the eyewitness had a good opportunity for positive identification; that the witness was positive in his identification; that the identification was not weakened by prior failure to identify; and that the witness remained positive as to his identification, even after cross-examination. Therefore, cautionary instructions were not necessary. *Pisano v. State,* 636 P.2d 358 (Okl.Cr.1981).

### X

It is next contended that the District Attorney committed reversible error by making improper comments throughout the trial. The appellant presents a series of alleged instances of misconduct, ranging from side comments during the examination of witnesses to closing remarks made before the jury.

■ A conviction cannot be reversed for alleged misconduct of the prosecuting attorney, unless that conduct might in some de-

gree have influenced the verdict against the appellant. *Gowler v. State,* 589 P.2d 682 (Okl.Cr.1978).

 Although some of Mr. Fallis' comments appear to exceed the permissible bounds of argument, we do not find that his conduct constitute grounds for reversal; evidence of the appellant's guilt is overwhelming, and the record does not indicate that the remarks were so prejudicial as to substantially affect the jury's finding. *Hux v. State,* 554 P.2d 82 (Okl.Cr.1976).

### XI

The appellant requests this Court to consider an assignment of error which is not only unsupported by any citation of authority, but also violates Rule 3.5(D) of the rules of this Court. Therefore, the contention will not be considered on appeal. See, *Tabor v. State,* 582 P.2d 1323 (Okl.Cr.1978).

### XII

Having found no error requiring modification or reversal, the appellant's final argument concerning an accumulation of error is also without merit. *Tabor v. State,* supra.

The judgment and sentence is AFFIRMED.

BUSSEY, P.J., specially concurring.

BRETT, J., concurs.

BUSSEY, Presiding Judge, specially concurring:

Finding the record free from any errors which require reversal or modification, I agree that the conviction should be AFFIRMED.